**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ESTATE OF NANCY ELIZABETH MILLER,                                                PLAINTIFFS
Deceased; KATHERINE ANN STANTON and
KAREN ELIZABETH PHILLIPS, as beneficiaries
of the Lou & Liz Miller Joint Revocable Trust
Dated February 16, 2011

v.                                          No. 4:14CV00312 JLH

LOUIS T. MILLER, individually and as Trustee
of the Lou & Liz Miller Joint Revocable
Trust Dated February 16, 2011                                                     DEFENDANTS

**OPINION AND ORDER**

      Katherine Ann Stanton and Karen Elizabeth Phillips are the daughters of Nancy Elizabeth Miller, deceased. They are also co-administrators of her estate. They commenced this action in the Circuit Court of Pulaski County, Arkansas, seeking a declaration that a power of attorney that the decedent executed on April 16, 2006, is void *ab initio*; that a joint trust and will executed on February 16, 2011, are void *ab initio*; that a confidential relationship existed between Louis T. Miller and the decedent; and that Louis breached his fiduciary duties to her. In addition, the complaint sought recovery for conversion and fraudulent concealment. Louis removed the action to this Court based on diversity of citizenship. The Estate filed an amended complaint and moved to remand, arguing that the probate exception to federal jurisdiction precludes this Court from exercising jurisdiction over its claim for a declaratory judgment that the 2011 will was void *ab initio* and that the Court should abstain from exercising jurisdiction over the remaining claims pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). For the reasons explained below, the motion to remand is granted in part and denied in part.

**I.**

In 1995, the decedent, Elizabeth Miller, married Louis T. Miller. The couple entered into a prenuptial agreement under which each retained the right to dispose of his or her separate property. In October 2005, Elizabeth began complaining of memory loss. She was diagnosed with Alzheimer's disease, and her condition progressively deteriorated until December 2011 when she was hospitalized. Upon her release, her doctor recommended 24-hour home supervision. Thereafter, Louis provided Elizabeth with 24-hour home supervision.

Four months later, on April 16, 2009, Elizabeth executed a power of attorney that designated her husband as her attorney-in-fact. On May 29, 2009, Elizabeth executed a deed by which her separately-owned residence was sold, and the proceeds were transferred into an account jointly held by the couple at the Bank of America. On February 16, 2011, Elizabeth and Louis executed a durable power of attorney, a living will declaration, HIPAA authorizations, a will, and a beneficiary deed conveying her and Lewis's jointly-owned residence to the joint trust upon the death of the second of the two. On May 11, 2011, the assets in an account held in Elizabeth's name were transferred to a USAA investment account held in her name. Those assets were subsequently transferred to a different USAA account held in the name of the trust. On June 4, 2011, a copy of the trust and a trustee certification form was delivered to the Hartford for an annuity. Although the beneficiary of the Hartford annuity had previously been the Estate, the beneficiary of the Hartford annuity was changed to Louis.

On June 4, 2012, Elizabeth died. Louis subsequently engaged in various other financial transactions. On February 11, 2013, Louis filed a petition to probate Elizabeth's will. In the petition he identified the value of the personal and real property of the Estate as $0. Then, on April 5, 2013,

Louis withdrew his petition for probate of Elizabeth's will.

## II.

The face of the amended complaint shows that this action meets the requirements for original jurisdiction under 28 U.S.C. § 1332 based on a diversity of citizenship and the amount in controversy. *See* Document #15 at 2. However, even when all the prerequisites for federal diversity jurisdiction are otherwise present, federal courts are generally precluded from exercising jurisdiction in cases that challenge the validity of a will. *Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002). "Whether that is the case depends on the remedy available to [the plaintiff] under [state] law." *Id.* at 998.

> Generally, where the dispute over the will would be cognizable only in a state probate court, a federal court is deprived of jurisdiction over the contest, and the aggrieved party must pursue the action in the probate court. *Rienhardt v. Kelly*, 164 F.3d 1296, 1300 (10th Cir. 1999); *Moore v. Graybeal*, 843 F.2d 706, 709 (3d Cir. 1988). But if state law authorizes a suit *inter partes* to annul a will or to set aside the probate of a will, and the suit is enforceable in a court of general jurisdiction within the state, a federal court may entertain jurisdiction over the will contest. *Id.*; *see also Bassler v. Arrowood*, 500 F.2d 138, 141 (8th Cir. 1974) ("Where the action is clearly in personam, federal courts have the power to adjudicate the controversy."), *cert. denied*, 419 U.S. 1116, 95 S. Ct. 796, 42 L. Ed. 2d 815 (1975). The action authorized by state law must not be incidental to, or an ancillary proceeding of, the prior probate action for federal jurisdiction to exist. *Moore*, 843 F.2d at 709.

*Id*. Thus, according to *Sianis*, whether this Court has jurisdiction to decide the validity of Elizabeth's February 2011 will depends on whether in Arkansas that issue would be cognizable exclusively in a probate court or whether it also would be cognizable in a suit *inter partes* in a court of general jurisdiction.

In Arkansas, "[t]here is no right to contest a will, except as provided by statute." *Coleman v. Coleman,* 257 Ark. 404, 408, 520 S.W.2d 239, 242 (1974); *Manning v. Manning*, 206 Ark. 425, 175 S.W.2d 982, 984 (1943) ("[T]here is no right to contest a will except such as is conferred by

3

statute."); *Robertson v. Robertson*, 144 Ark. 556, 223 S.W. 32, 33 (1920) ("The right to contest a will is not an inherent or constitutional right. Such a right is purely statutory, and does not exist independently of statutory authority.").

The validity of a will may be adjudicated by means of an *in rem* probate proceeding. "An interested person may contest the probate of a will, or any part thereof, by stating in writing the grounds of his or her objection and filing them in the court." Ark. Code Ann. § 28-40-113(a). "The administration of the estate of a decedent from the filing of the petition for probate and administration or for administration until the order of final distribution and the discharge of the last personal representative shall be considered as one (1) proceeding for purposes of jurisdiction." *Id.* § 28-40-101(a). "The entire proceeding is a proceeding in rem." *Id.* § 28-40-101(b). "A will contest is not a civil action, but is a special proceeding." *Coleman*, 257 Ark. at 408, 520 S.W.2d at 242.

> Since the advent of [Arkansas's] original Civil Code, there have been two types of proceedings in Arkansas law. One is a civil action; the other is a special proceeding. *Coleman v. Coleman,* 257 Ark. 404, 520 S.W.2d 239 (1974). . . . A civil action is an ordinary proceeding in a court of justice by one party against another for the enforcement or protection of a private right or the redress or prevention of a private wrong. *Id.* . . . All proceedings not covered by the definition of "civil action" are special proceedings. *Garrett v. Andrews,* 294 Ark. 160, 741 S.W.2d 257 (1987).

*Sosebee v. Cnty. Line Sch. Dist.*, 320 Ark. 412, 415, 897 S.W.2d 556, 558-59 (1995); *Weidrick v. Arnold*, 310 Ark. 138, 145, 835 S.W.2d 843, 847 (1992) ("Over the years, [the Supreme Court of Arkansas] has referred to multiple special proceedings created by statute which do not constitute civil actions.") (listing cases).

> There are no plaintiffs and defendants in a will contest, and it is not instituted by the filing of a complaint. This was the case in the Civil Code, which applied to probate courts only in civil actions and had separate provisions governing will contests. See

>Civil Code ss 24, 806, s 513.  While those provisions governing will contests have been superseded by the Probate Code of 1949, the nature of the proceedings has not.

*Coleman*, 257 Ark. at 408, 520 S.W.2d at 242.

Here, the will was not probated, and the Estate did not seek to contest the will under the probate statutes.  Rather, the Estate's state court complaint asserted a claim pursuant to Arkansas's declaratory judgment act.  That act provides, in pertinent part: "Any person interested under a . . . will . . . may have determined any question of . . . validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104.

Whether a plaintiff may contest the validity of a will under the Arkansas declaratory judgment act is an issue of first impression.  This Court has located no Arkansas authority that suggests an answer to this question.  The most apposite federal authority is *Kausch v. First Wichita Nat. Bank of Wichita Falls, Tx.*, 470 F.2d 1068, 1069 (5th Cir. 1972).  In *Kausch*, the plaintiff claimed that the federal court had jurisdiction to declare a will invalid in an action brought under the Texas declaratory judgment act.  The language of Texas's declaratory judgment act was identical in all relevant respects to Arkansas's act, providing, "Any person interested under a . . . will . . . may have determined any question of . . . validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." *See id.* at 1070 n.1.  The district court found that the court lacked jurisdiction to hear the case under *Sutton v. English*, 246 U.S. 199, 208, 38 S. Ct. 254, 257, 62 L. Ed. 664 (1918).  On appeal, the Fifth Circuit interpreted the phrase "arising under the instrument" in the declaratory judgment act to mean that the Texas courts could declare invalid only particular provisions of a will that has already been admitted to probate. *Kausch*, 470 F.2d at 1070.  The court found that under the declaratory judgment act Texas courts

5

"have no power to conduct an independent inquiry into the validity of the will as a testamentary instrument." *Id.* Consequently, the federal court found that it lacked jurisdiction over the plaintiff's claim.

Other courts have found that actions to declare a will invalid under state declaratory judgment acts do not lie for various reasons. *See Corron v. Corron*, 40 Ohio St. 3d 75, 79, 531 N.E.2d 708, 712 (1988) (holding that an action challenging the validity of a will may not be brought under Ohio's declaratory judgment act) (quoting *Davidson v. Brate*, 44 Ohio App. 2d 248, 251, 337 N.E.2d 642, 645 (Ohio Ct. App. 1974) ("[D]espite the use of the word 'validity' in [the declaratory judgment act], the exclusive method of challenging a will alleged to be invalid on the ground of undue influence is by a will contest action.")); *Martin v. Kenworthy*, 92 Or. App. 697, 698, 759 P.2d 335, 336 (1988) (per curiam) ("There is no authority, statutory or otherwise, that allows avoidance of the will contest limitation by designating an action as one on a claim or for a declaratory judgment based on purported invalidity of a will."); *Lipsey v. Lipsey*, 660 S.W.2d 149, 150 (Tex. App. 1983) ("[W]e hold the validity of the entire will cannot be questioned through a declaratory judgment proceeding."); *Howard Hughes Med. Inst. v. Lummis*, 596 S.W.2d 171, 173 (Tex. Civ. App. 1980) ("To allow the declaratory judgment mechanism to determine the validity of HHMI's claim that a valid will exists would impermissibly subvert the statutory scheme and time limitations established by the probate code."); *Henry v. Cottingham*, 253 S.C. 286, 293, 170 S.E.2d 387, 391 (1969) (holding that South Carolina's declaratory judgment act "is not a vehicle for the nullification of such instruments. Nor is it a substitute or alternate method of contesting the validity of wills."); *Farthing v. Farthing*, 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952) (North Carolina) (same). But see *In re Estate of Boote*, 198 S.W.3d 699, 715 (Tenn. Ct. App. 2005) (holding that a plaintiff's

"declaratory judgment petition, with a copy of the third codicil attached, was sufficient to initiate a will contest" in a probate proceeding); *Harkins v. Crews*, 907 S.W.2d 51, 57 (Tex. App. 1995) (holding that the trial court's determination that the invalidity of an unprobated will under Texas's declaratory judgment act was not error where the action was joined with a probate action and multiple wills were before the court); *Matter of Moerschel's Estate*, 86 Ill. App. 3d 482, 485, 407 N.E.2d 1131, 1134 (1980) (holding that an action under the Illinois declaratory judgment act to void a will must be construed as a will contest that is governed by the laws controlling such contests in probate proceedings).

Assuming, without deciding, that an action to contest the validity of a will may be brought under Arkansas's declaratory judgment act, the question remains whether such an action is cognizable under the general jurisdiction of the Arkansas courts. The Supreme Court of Arkansas has explained:

> Under our declaratory judgment act, courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. Ark. Code Ann. § 16–111–103(a) (1987). The act itself does not confer subject-matter jurisdiction; thus, there must be an independent basis for the court's jurisdiction before it may render a declaratory judgment. *UHS of Ark., Inc. v. Charter Hosp. of Little Rock, Inc.,* 297 Ark. 8, 759 S.W.2d 204 (1988). Courts of equity do not have jurisdiction to render declaratory judgments where the subject matter is not cognizable in a court of equity. *City of Garland v. Miller County*, 270 Ark. 981, 606 S.W.2d 751 (1980). The pertinent inquiry is whether exclusive jurisdiction of the subject matter is vested in a particular tribunal by the Arkansas Constitution. *Daley v. Digby,* 272 Ark. 267, 613 S.W.2d 589 (1981).

*Bryant v. Picado*, 338 Ark. 227, 231, 996 S.W.2d 17, 19 (1999); *see, e.g.*, *Martin v. Equitable Life Assur. Soc. of the United States*, 344 Ark. 177, 181, 40 S.W.3d 733, 737 (2001) (Arkansas's declaratory judgment "statutes do not confer subject-matter jurisdiction. Thus, declaratory judgment is procedural, not jurisdictional." (internal citations omitted)).

Understanding the nature of the present jurisdictional arrangement of Arkansas's courts requires some understanding of the history of probate jurisdiction in those courts. The original Arkansas constitution of 1836 provided that the presiding judge of the county court would "be a judge of the Court of Probate, and have such jurisdiction in matters relative to the estates of deceased persons, executors, administrators and guardians, as may be prescribed by law, until otherwise directed by the General Assembly." Ark. Const. of 1836, art. 6 § 10. Actions to invalidate a will typically began with a proceeding in a probate court. By statute enacted in 1838, Arkansas law provided, "The court of probate or the clerk thereof in vacation, subject to the rejection of the court, shall have power to take the probate of wills. Josiah Gould, Digest of the Statutes of Arkansas (1858), ch. 180 at 1076 § 16. "When any will shall be exhibited for probate, the court of probate or the clerk thereof in vacation may immediately receive proof thereof, and grant a certificate of probate, or if such will be rejected shall grant a certificate of such rejection. *Id.* § 18. However, the statute further provided that within five years after the probate court's probate or rejection of a will, "any person interested in the probate of any will" could petition the circuit court "to have any such will rejected, if previously established, or proven, if previously rejected by the court of probate." *Id.* at 1078 § 32. Much later, the Supreme Court of Arkansas described this statutory language as "providing for an original proceeding in the circuit court without regard, and in addition, to the right of appeal from the probate court." *Dowell v. Tucker*, 46 Ark. 438, 440 (1885).

The Arkansas constitutions of 1861 and 1864 contained virtually identical language to the constitution of 1836. *See* Ark. Const. of 1861, art. 6 § 12; Ark. Const. of 1864, art. 7 § 12. However, the Arkansas constitution of 1868 provided that "the General Assembly may provide for

8

the establishment of such inferior courts, changes of jurisdiction, or abolition of existing inferior courts as may be deemed requisite." Ark. Const. of 1868, art. 7 § 5.

> By an act approved April 16, 1873, this "*exclusive original jurisdiction*, in all matters pertaining to probate and of administration," was transferred to the Circuit Court. The experiment was not satisfactory, and by the Constitution of 1874, the Probate Courts were re-established. It was provided, (Art. VII, Sec. 34,) that they should have "*such* exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, etc., * * * as is *now vested* in the Circuit Court, or may be hereafter prescribed by law."

*Reinhardt v. Gartrell*, 33 Ark. 727, 728 (1878) (alterations in *Reinhardt*).

The Supreme Court of Arkansas stated that, "under the constitution of 1874, the circuit court has not and cannot take original jurisdiction in any matter relative to the probate of wills." *Dowell*, 46 Ark. at 451; *see Ouachita Baptist Coll. v. Scott*, 64 Ark. 349, 350, 42 S.W. 536, 537 (1897) ("[T]he circuit court has no original jurisdiction now, as formerly, to try . . . a contest [of a will], since the constitution confers original and exclusive jurisdiction of wills, etc., upon the probate court."); *Mitchell v. Rogers*, 40 Ark. 91, 97 (1882) (stating that the constitution of 1874 left "in the Circuit Courts only an appellate jurisdiction."). The Supreme Court of Arkansas also held that "a court of equity has no jurisdiction to hear and determine a contest of a will." *Ouachita Baptist Coll.*, 64 Ark. at 350, 42 S.W. at 537 (citing *Mitchell v. Rogers*, 40 Ark. 91, 97 (1882)); *see also McLeod v. Griffis*, 45 Ark. 505, 511 (1885) ("This court has repeatedly held that a court of chancery has no original or appellate jurisdiction in matters of probate and the administration of estates.").

This constitutionally-prescribed jurisdictional arrangement continued largely unchanged until 2001,[1] when Amendment 80 to the Arkansas constitution eliminated the "[j]urisdictional lines that

---

[1] In 1937, the Arkansas constitution was amended to create a direct appeal from probate courts to the Supreme Court of Arkansas. *See* Ark. Const. amend. 24 § 2; *id.*, art. 7 § 35 (as amended); *Lewis v. Smith*, 198 Ark. 244, 129 S.W.2d 229, 230 (1939). The amendment did not alter

9

previously forced cases to be divided artificially and litigated separately in different courts." *First Nat. Bank of DeWitt v. Cruthis*, 360 Ark. 528, 533, 203 S.W.3d 88, 91 (2005). "[C]ircuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court." *Id.*, 203 S.W.3d at 92; *see* Ark. Const. amend. 80 § 19(b)(1) ("Circuit Courts shall assume the jurisdiction of Circuit, Chancery, Probate and Juvenile Courts."). "However, . . . Amendment 80 did not alter the jurisdiction of law and equity. It only consolidated jurisdiction in the circuit courts." *First Nat. Bank of DeWitt*, 360 Ark. at 534, 203 S.W.3d at 92.

Before Amendment 80 went into effect, "[t]he probate court [was] a court of special and limited jurisdiction, even though it [was] a court of superior and general jurisdiction within those limits. It [had] only such jurisdiction and powers as [were] expressly conferred by statute or the constitution, or necessarily incident thereto." *Hamaker v. Strickland*, 340 Ark. 593, 596, 12 S.W.3d 210, 212 (2000) (internal citations omitted). The circuit courts' "assum[ption]" of jurisdiction and its "consolidat[ion]" under those courts' purview, Ark. Const. amend. 80 § 19(b)(1); *First Nat. Bank of DeWitt*, 360 Ark. at 534, 203 S.W.3d at 92, did not cause matters previously cognizable by probate courts to be absorbed into the general jurisdiction of the circuit courts. *See Dragan v. Miller*, 679 F.2d 712, 715 (7th Cir. 1982) ("Although Illinois has now abolished separate probate courts, the scope of the probate jurisdiction remains unchanged, much as the merger of law and equity left unchanged the scope of equity jurisdiction for such purposes as deciding whether a party has a right to a jury trial." (internal citations omitted)).

Therefore, subsequent to Amendment 80, probate jurisdiction under the laws of Arkansas continues to be special and limited. It follows from what has been said that Arkansas's declaratory

---

the probate court's original exclusive jurisdiction over matters pertaining to wills.

judgment act empowers a circuit court to issue a declaratory judgment regarding the validity of a will only by virtue of its probate jurisdiction. Ark. Code Ann. § 16-111-103(a) ("Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.").

Because a declaratory judgment action to declare a will invalid is not cognizable under the general jurisdiction of Arkansas's circuit courts, and if *Sianis* is still good law, the probate exception deprives this Court of subject matter jurisdiction over the Estate's request for a declaration that the will is void.

Perhaps the issue is not so complicated as all of that. Four years after the Eighth Circuit decided *Sianis*, the Supreme Court endeavored to clarify the probate exception in *Marshall v. Marshall*, 547 U.S. 293, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006). There, the Court stated, "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." *Id*. at 311, 126 S. Ct. at 1748. If the law is really as clear and simple as this statement seems to suggest, a federal court cannot annul Elizabeth's February 2011 will. This Court lacks jurisdiction over that portion of the plaintiffs' claims.

## III.

The Estate argues that this Court should remand the entirety of the Estate's action pursuant to *Colorado River Water Conservation District*, 424 U.S. 800, 96 S. Ct. 1236 (1976). The Estate contends that this Court's remand of the claim for a declaration that the will is void and its exercise of jurisdiction over the remaining claims would result in parallel litigation and piecemeal adjudication of the issues. It maintains that the evidence regarding the validity of the will is identical to the evidence regarding the validity of the trust that was executed on the same day,

February 26, 2011. The Estate further maintains that the evidence will be virtually identical to the evidence regarding the transfer of the trust and change of beneficiary designation of Elizabeth's Hartford annuity on June 4, 2011, the transfer of Elizabeth's USAA account on July 28, 2011, the power of attorney executed on April 16, 2009, and the transfer of the proceeds of Elizabeth's residence on May 29, 2009.

The defendant responds that the Estate's claims for breach of fiduciary duty, conversion, and fraudulent concealment are wholly unrelated to the validity of the will. Furthermore, the defendant argues that the evidence regarding the power of attorney would include an analysis of Elizabeth's mental state at a point in time that is nearly two years removed from the execution of the will. The defendant contends that this Court's remand of the will would not result in piecemeal litigation because the issues and evidence involved in the other claims are unrelated to the validity of the will.

Under the *Colorado River* abstention doctrine, a federal court may abstain from exercising jurisdiction over an action where there are pending parallel state and federal proceedings. *United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010). "Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ."" *Colorado River Water Conservation Dist.*, 424 U.S. at 817, 96 S. Ct. at 1246 (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S. Ct. 501, 505, 54 L. Ed. 762 (1910)). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.*, 96 S. Ct. at 1246. "Only the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S. Ct. at 1247. Courts consider the following factors:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has

> priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*U.S. Fid. & Guar. Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir. 1994). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River Water Conservation Dist.*, 424 U.S. at 818-19, 96 S. Ct. at 1247.

Here, state law governs the Estate's claims and the state forum would be adequate to protect the rights of the parties. These two factors cut in favor of abstention. However, the other factors cut against it. There is no res over which a court has established jurisdiction. There is also no reason to believe that the federal forum is less convenient to the parties than the state forum. Although remanding the issue of the validity of the will does present the potential for piecemeal litigation, the federal court issues are easily severed. The defendant has indicated that the value of the Estate is $0. If that is true, no assets will be affected by the determination of whether the will is valid. On the other hand, issues regarding substantial sums of money seem to be presented outside of the issues regarding the will. To allow a claim that apparently has no monetary value to deprive this Court of jurisdiction over claims involving large sums of money would be to allow the tail to wag the dog. Finally, the case has not proceeded far in either state or federal court, so neither court has priority. Carefully considering these factors, the Court finds that they fall short of providing "the clearest of justifications [to] warrant dismissal." *Id.* at 819, 96 S. Ct. at 1247. Therefore, abstention is not warranted under *Colorado River*.

## CONCLUSION

For the reasons explained above, the Estate's motion to remand is granted in part and denied in part.  Document #9.  The Estate's claim for a declaration that Elizabeth's will is void will be remanded to the Circuit Court of Pulaski County, Arkansas.  This Court will retain jurisdiction over the remaining claims.

IT IS SO ORDERED this 7th day of October, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE